■ In the Matter of the Claim of RICHARD D. TUCKER, Appellant, v CITY OF PLATTSBURGH FIRE DEPARTMENT et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent. [59 NYS3d 609]—

Peters, P.J. Appeal from a decision of the Workers' Compensation Board, filed October 22, 2015, which ruled that claimant did not sustain a causally related injury and denied his claim for workers' compensation benefits.

Claimant worked as a firefighter and medical technician for the City of Plattsburgh, Clinton County for 24 years. After being diagnosed with prostate cancer at the age of 51, claimant filed a claim for workers' compensation benefits alleging that he was exposed to toxic fumes and asbestos as a firefighter and that he contracted prostate cancer as a result. The claim was controverted, and, after a hearing, a Workers' Compensation Law Judge (hereinafter WCLJ) established the claim for occupational prostate cancer. Following a majority decision, with one Board panel member dissenting, and ensuing mandatory full Board review, the full Board, based upon the divergent medical opinions in the record and the nature of claimant's illness, rescinded the WCLJ's decision and appointed an impartial specialist in the field of oncology to offer an opinion on causal relationship. Following that evaluation, the same Board panel, with one dissenting member, reinstated and affirmed the WCLJ's decision establishing the claim. Upon its mandatory review, the full Board determined in a majority decision that the medical opinions in the record supporting a finding of causal relationship were unconvincing and speculative and, therefore, insufficient to support a finding of causal relationship between claimant's prostate cancer and employment as a firefighter. The full Board therefore rescinded the WCLJ's decision, and this appeal by claimant ensued.

It is well established that, "[a]s the party seeking benefits, claimant bore the burden of establishing—by competent medical evidence—a causal connection between his employment and the claimed disability" (*Matter of Qualls v Bronx Dist. Attorney's Off.*, 146 AD3d 1213, 1214 [2017], *lv denied* 29 NY3d 906 [2017]; *see Matter of Bordonaro v Genesee County Sheriff's Off.*, 148 AD3d 1507, 1508 [2017]).[1] "In this regard, while the Board cannot rely upon expert opinion evidence that amounts to nothing more than pure speculation, the Workers' Compensation Law does not require that medical opinions be expressed with absolute or reasonable medical certainty" (*Matter of*

---

1. General Municipal Law § 207-kk "creates a rebuttable presumption that a firefighter who develops certain enumerated types of cancers incurred them in the course of performing his or her duties, thereby eliminating the burden of proving causation" (*Matter of Albano v Board of Trustees of N.Y. City Fire Dept., Art. II Pension Fund*, 98 NY2d 548, 553 [2002]). The enactment of this statute "resulted from the development of medical data demonstrating the high incidence of cancer in firefighters, as compared with the average adult population" (*id.*; *see* L 1994, ch 567). Inasmuch as the statute only applies, however, "to a paid member of a fire department in a city with a population of one million or more" (General Municipal Law § 207-kk), the presumption is inapplicable here.

*Qualls v Bronx Dist. Attorney's Off.*, 146 AD3d at 1214 [internal quotation marks, brackets and citations omitted]; *accord Matter of Estate of Harris v General Elec. Co.*, 115 AD3d 1133, 1134 [2014]). Nevertheless, "[w]here medical proof is relied upon to demonstrate the existence of a causal relationship, it must signify a probability of the underlying cause that is supported by a rational basis and not be based upon a general expression of possibility" (*Matter of Granville v Town of Hamburg*, 136 AD3d 1254, 1255 [2016] [internal quotation marks and citations omitted]; *see Matter of Norton v North Syracuse Cent. School Dist.*, 59 AD3d 890, 891 [2009]).

Claimant responded to approximately 577 fire calls, which included roughly 100 actual fires, over his 24-year career as a firefighter, and he filled out an exposure report on at least four occasions when he felt that he had been exposed to something out of the ordinary, although claimant indicated that he is not specifically aware of the various chemicals or toxins to which he might have been exposed. In addition to periodically working for a friend in the plumbing and heating business to clean furnaces and other related tasks, claimant, prior to becoming a firefighter, was employed as a deliverer of kerosene for at least eight years.

In a March 2009 report, Michael Lax, a board-certified occupational disease specialist, opined that claimant was likely exposed to a wide range of materials in the course of fighting fires, including polycyclic aromatic hydrocarbons and diesel fumes from the fire trucks, each of which are likely to have been of major importance with regard to the cause of his prostate cancer.[2] Lax also noted that epidemiologic studies have demonstrated an increased risk of prostate cancer among firefighters and that claimant, over his 24-year career, would have had ample time for exposure to carcinogenic materials. He also acknowledged, however, that claimant had never received medical treatment for smoke inhalation and that he could have been exposed to carcinogens while cleaning fur-

---

**2.** "Polycyclic aromatic hydrocarbons (PAHs) are a class of chemicals that occur naturally in coal, crude oil, and gasoline. They also are produced when coal, oil, gas, wood, garbage, and tobacco are burned. . . . Human health effects from environmental exposure to low levels of PAHs are unknown. . . . Several of the PAHs and some specific mixtures of PAHs are considered to be cancer-causing chemicals" (US Department of Health & Human Services, Centers for Disease Control and Prevention, *Polycyclic Aromatic Hydrocarbons [PAHs]* at 1 [Nov. 2009], available at https://www.epa.gov/north-birmingham-project/polycyclic-aromatic-hydrocarbons-pahs-fact-sheet, cached at http://www.nycourts.gov/reporter/webdocs/Polycyclic-Aromatic-Hydrocarbons-(PAHs)-FactSheet-North-Birmingham-Enviro.pdf).

naces in the plumbing and heating business. Nevertheless, Lax testified that, notwithstanding other plausible risk factors such as claimant's age, claimant's prostate cancer was likely caused by cumulative exposure to carcinogenic materials during his work as a firefighter.

In contrast to the views expressed by Lax, the employer's consultant, Warren Silverman, a board-certified specialist in internal, occupational and forensic medicine who reviewed claimant's medical records, reported that the epidemiological studies linking firefighting and certain types of cancer fail to adequately examine environmental and demographic factors that would affect the risk of cancer. Silverman stated that it was not possible to definitively ascertain whether claimant's prostate cancer—a "very common disease" among men—was caused by his employment as a firefighter given the lack of information regarding what claimant was specifically exposed to while fighting fires. He therefore could not conclude that there was a causal relationship and opined that any attempt to do so would be based upon speculation. Silverman testified that there are also no studies that establish causation between firefighting and prostate cancer and that this is in large part because prostate cancer is already the second leading cause of death for men before even taking into consideration any occupational risks or other risk factors. Silverman also stated that there was nothing specific about claimant's firefighting duties suggesting an increased risk for an occupationally-related disease compared to the general population.

Lawrence Garbo, an oncologist appointed as the impartial specialist by the full Board, reported, based upon his review of the relevant record evidence, that claimant did not present with any elevated risk factors typically associated with prostate cancer and that the incidence of new cases of prostate cancer in claimant's "age group is well under 0.5%." Garbo stated that although claimant had been exposed to inhalant toxins, polycyclic aromatic hydrocarbons and diesel exhaust, he could not accurately quantify, or describe the extent of, that exposure. Nevertheless, Garbo concluded that it was "reasonable to assume that [claimant's] employment as a firefighter for 24 years may have [had] a causal relationship to the development of prostate cancer." In his testimony, however, Garbo conceded that he was unaware of claimant's other previous employment consisting of cleaning furnaces and delivering kerosene or of the minimal number of exposure reports submitted by claimant during his 24-year career as a firefighter and that, upon being apprised of this information, he could not assign a causal rela-

tionship.[3] In view of the foregoing conflicting evidence, including the prevalence of prostate cancer and the other possible explanations for claimant contracting the condition (*compare Matter of Estate of Harris v General Elec. Co.*, 115 AD3d at 1134), we find that the full Board acted within its discretion in characterizing as speculative and ultimately rejecting the reports of Lax and Garbo with regard to the existence of a causal relationship (*see Matter of Qualls v Bronx Dist. Attorney's Off.*, 146 AD3d at 1214-1215; *Matter of Mayette v Village of Massena Fire Dept.*, 49 AD3d 920, 922 [2008]; *cf. Matter of Bordonaro v Genesee County Sheriff's Off.*, 148 AD3d at 1508). Absent sufficient medical evidence to establish a causal relationship between claimant's employment and his condition, we are unable on this record to conclude that the full Board's determination lacked a rational basis and was not supported by substantial evidence.

Garry, Rose and Mulvey, JJ., concur.

Egan Jr., J. (dissenting). As the majority correctly notes, although the Workers' Compensation Board "cannot rely upon expert opinion evidence that amounts to nothing more than pure speculation, the Workers' Compensation Law does not require that medical opinions be expressed with absolute or reasonable medical certainty" (*Matter of Qualls v Bronx Dist. Attorney's Off.*, 146 AD3d 1213, 1214 [2017] [internal quotation marks and citations omitted], *lv denied* 29 NY3d 906 [2017]). Rather, when seeking to establish a causal connection between a claimant's employment and the asserted disability, "all that is required is that it be reasonably apparent that the expert meant to signify a probability as to the cause and that his or her opinion be supported by a rational basis" (*id.* at 1214 [internal quotation marks, brackets and citations omitted]). As I am satisfied that the expert opinion rendered by Michael Lax was more than sufficient to establish the requisite causal connection between claimant's occupation as a firefighter, his resulting exposure to carcinogenic materials and his diagnosed prostate cancer, I respectfully dissent.

Although there is no question that "the Board is vested with the authority to credit the opinion of one medical expert over another" (*Matter of Pengal v Chloe Foods Corp.*, 111 AD3d 1030, 1031 [2013]), the ultimate inquiry distills to whether claimant's

---

**3.** Orlando Martelo, claimant's treating physician, also opined in an October 2008 report that he did not believe that claimant's prostate cancer was related to his job as a firefighter; however, Martelo did not provide an explanation for this conclusion and neither provided any testimony nor was subject to cross-examination.

proof relative to the issue of causal connection may fairly be characterized as speculative. To my analysis, the answer to that question is no. Lax opined that claimant's 24 years as a firefighter afforded him "ample time for exposure to carcinogenic materials," which included routine exposures to polycyclic aromatic hydrocarbons—a common byproduct of combustion—and diesel fumes. Although acknowledging that claimant was never treated for smoke inhalation and filed a limited number of "incident reports," Lax noted that claimant "reported symptoms on a fairly regular basis after [a] fire[,] including cough, burning eyes[ ] and headache." While Lax—like any other honest physician—could neither definitively state that claimant's prostate cancer was caused by repeated exposure to carcinogenic materials nor rule out other possible causes, the record indeed reflects, as the majority acknowledges, "that claimant did not present with any elevated risk factors typically associated with prostate cancer and that the incidence of new cases of prostate cancer in claimant's 'age group is well under 0.5%.' " Based upon the absence of other risk factors, claimant's known, long-term exposure to carcinogenic materials and certain epidemiologic studies evidencing an increased risk of prostate cancer among firefighters, Lax concluded that claimant's "prostate cancer was likely caused by cumulative exposure to carcinogenic materials during his work as a firefighter" and characterized such exposures "as the likely major contributing cause of the development of his prostate cancer." As the opinion rendered by Lax in this regard signified a probability as to the cause of claimant's cancer, and such opinion, in turn, is supported by a rational basis in the record as a whole, I am of the view that the Board indeed abused its discretion in characterizing such proof as speculative.* Accordingly, I would reverse and find that claimant met his burden of proof as to the issue of causal relationship.

Ordered that the decision is affirmed, without costs.

---

* Although admittedly not dispositive, it is interesting to note that, at each administrative stage of this proceeding, one or more individuals credited the medical proof offered by claimant. The Workers' Compensation Law Judge—both initially and following remittal—found sufficient proof of a causal relationship, a majority of the Board panel twice reached the same conclusion and, even though the full Board ultimately reversed and denied claimant's claim, it did so in a 7 to 4 decision. To my thinking, this lack of unanimity is telling and belies the assertion that claimant's proof was based upon nothing more than unsubstantiated possibilities and rank speculation.