Matter of Corina-Chernosky v Dormitory Auth. of State of N.Y. (2018 NY Slip Op 00202)





Matter of Corina-Chernosky v Dormitory Auth. of State of N.Y.


2018 NY Slip Op 00202


Decided on January 11, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 11, 2018

523436

[*1]In the Matter of the Claim of LYNNE CORINA-CHERNOSKY, Appellant,
v
DORMITORY AUTHORITY OF STATE OF NEW YORK et al., Respondents, et al., Respondent. WORKERS' COMPENSATION BOARD, Respondent.

Calendar Date: November 13, 2017

Before: Garry, P.J., Clark, Mulvey, Aarons and Rumsey, JJ.


Buckley, Mendleson, Criscione & Quinn, PC, Albany (Brendan G. Quinn of counsel), for appellant.
Law Offices of Paul M. Holstein, New York City (Sarah L. Baia of counsel), for Dormitory Authority of State of New York and another, respondents.


Garry, P.J.

MEMORANDUM AND ORDER
Appeal from a decision of the Workers' Compensation Board, filed October 8, 2015, which ruled that claimant did not sustain an occupational disease and denied her claim for workers' compensation benefits.
Claimant has worked for the employer since approximately 1995 — most recently as a construction analyst. While so employed, claimant was absent from work for three years due to unrelated workers' compensation claims that stemmed — in part — from a harassment claim filed against claimant's then supervisor. When claimant returned to work in February 2009, her daily duties included, among other things, data entry and physically handling and relocating large files. As a result of these purportedly repetitive activities, claimant allegedly experienced pain in her right shoulder (for which she sought treatment in April 2010) and numbness and pain in both wrists and hands (for which she sought treatment in October 2010).
In March 2012, claimant filed a claim for workers' compensation benefits alleging an occupational disease — specifically, rotator cuff tendonitis and bilateral carpal tunnel syndrome. The employer and its workers' compensation carriers controverted the claim, and the matter proceeded to a hearing in October 2013 at which claimant appeared and testified. After the hearing, the matter was marked "[n]o further action" pending claimant's production of "all medical records for prior treatment to the right shoulder and wrists." Following the production of certain medical records and the depositions of claimant's treating physicians, a Workers' Compensation Law Judge disallowed the claim — finding that claimant was not a credible witness and, further, that there was insufficient medical evidence to support a causal connection between claimant's job duties and her claimed occupational diseases. The Workers' Compensation Board affirmed, prompting this appeal by claimant.
We affirm. "To be entitled to workers' compensation benefits for . . . an occupational disease, a claimant must establish a recognizable link between his or her condition and a distinctive feature of his or her occupation through the submission of competent medical evidence" (Matter of Phelan v Bethpage State Park, 126 AD3d 1276, 1277 [2015] [internal quotation marks and citations omitted], lv denied 25 NY3d 911 [2015]; see Simpson v New York City Tr. Auth., 151 AD3d 1160, 1161 [2017]; Matter of Granville v Town of Hamburg, 136 AD3d 1254, 1255 [2016]). Such medical proof, in turn, "must signify a probability of the underlying cause that is supported by a rational basis and not be based upon a general expression of possibility" (Matter of Granville v Town of Hamburg, 136 AD3d at 1255 [internal quotation marks and citation omitted]; accord Matter of Tucker v City of Plattsburgh Fire Dept., 153 AD3d 984, 986 [2017], lv denied 30 NY3d 906 [2017]). "The Board's decision regarding the presence and classification of a medical condition . . . is a factual consideration that will not be disturbed if it is supported by substantial evidence" (Matter of Yanas v Bimbo Bakeries, 134 AD3d 1321, 1321 [2015] [internal quotation marks and citations omitted]).
Here, the Board simply did not credit claimant's testimony regarding the initial onset of her symptoms and, further, found that she provided incomplete or inconsistent medical histories to each of the evaluating physicians. For example, although claimant reported that she began experiencing pain, numbness and tingling in her hands in late 2009, for which she indicated she first sought treatment in October 2010, the record suggests that claimant experienced and sought treatment for such symptoms as early as 2007. When pressed on this apparent inconsistency at the hearing, claimant acknowledged that she "may have had" pain, numbness or tingling in her hands prior to returning to work in February 2009 and simply delayed treatment until her symptoms worsened. While claimant could not recall reporting such symptoms to either her then-treating orthopedist in 2007 or an independent medical examiner in 2008, she acknowledged that if the respective records so reflected, then she "must have done that." Such testimony, in turn, prompted the Board to question whether claimant was being entirely forthcoming relative to her onset of symptoms. As the Board is "the sole arbiter of witness credibility" (Matter of Hill v Shoprite Supermarkets Inc., 140 AD3d 1564, 1565 [2016] [internal quotation marks and citations omitted]), its determination on this point will not be disturbed.
As to the issue of causation, it is worth noting that, of the three physicians who evaluated claimant, only the independent medical examiner was provided with and reviewed any of claimant's prior medical records. Both Michael Mulligan, the orthopedic surgeon who evaluated claimant in October 2010 for the pain in her wrists and hands, and Daniel Bowman, who evaluated and treated claimant for the pain in her right shoulder in April 2010, based their initial working diagnoses — bilateral carpal tunnel syndrome and rotator cuff tendonitis — on claimant's description of her history of symptoms and job duties. Mulligan acknowledged that carpal tunnel syndrome "is multi-factorial" and "idiopathic" in nature, as a result of which he [*2]could only say that claimant's work duties were "one of several factors" contributing to her symptoms; when pressed to assign a numerical value — from 1 to 100 — to the role that claimant's work activities may have played in this regard, Mulligan stated, "[o]ver 50 but . . .. I can't give you an exact number." With respect to claimant's rotator cuff tendonitis in her right shoulder, Bowman indicated that he "[could not] say whether this is causally related or not" to claimant's employment. To the extent that certain of the medical evidence as to causation was favorable to claimant, "[t]he resolution of conflicting medical opinions, particularly with regard to the issue of causation, is within the exclusive province of the Board" (Matter of Bailey v Ben Ciccone, Inc., 104 AD3d 1017, 1017-1018 [2013]). Claimant's remaining arguments, to the extent not specifically addressed, have been examined and found to be lacking in merit.
Clark, Mulvey, Aarons and Rumsey, JJ., concur.
ORDERED that the decision is affirmed, without costs.