Matter of Park v Corizon Health Inc. (2018 NY Slip Op 01110)





Matter of Park v Corizon Health Inc.


2018 NY Slip Op 01110


Decided on February 15, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 15, 2018

525363

[*1]In the Matter of the Claim of BYOUNG PARK, Appellant,
v
CORIZON HEALTH INC. et al., Respondents. WORKERS' COMPENSATION BOARD, Respondent.

Calendar Date: January 10, 2018

Before: McCarthy, J.P., Devine, Aarons, Rumsey and Pritzker, JJ.


John F. Clennan, Ronkonkoma, for appellant.
Vecchione, Vecchione, Connors & Cano, LLP, Garden City (Brian Anson of counsel), for Corizon Health Inc. and another, respondents.


McCarthy, J.P.

MEMORANDUM AND ORDER
Appeal from a decision of the Workers' Compensation Board, filed October 27, 2016, which ruled, among other things, that claimant did not sustain a further causally-related injury and denied her claim for workers' compensation benefits.
Claimant, a pharmacist, was working at a prison on September 15, 2014 when she was accidentally exposed to pepper spray that a guard was using to subdue an inmate. She began to experience dizziness and chest tightness, as well as other symptoms, and sought immediate medical treatment. Following this
incident, she returned to work for a few days, but was subsequently absent for nearly a year. In October 2014, she filed a claim for workers' compensation benefits and represented that she suffered from, among other things, an exacerbation of fibromyalgia. A Workers' Compensation Law Judge (hereinafter WCLJ) established the case for work-related injuries of posttraumatic stress disorder and depression arising from exposure to pepper spray and awarded benefits. Thereafter, the WCLJ continued the case for the submission of depositions from medical experts regarding additional sites of injury and further causally-related disability. Following further proceedings, the WCLJ amended the claim to include a work-related injury for the exacerbation of preexisting fibromyalgia and made additional awards. On appeal, the Workers' Compensation Board ruled, among other things, that there was no causal relationship between the exacerbation [*2]of claimant's preexisting fibromyalgia and her accidental exposure to pepper spray at work, and it reversed the WCLJ's decision. Claimant now appeals.
"The Board is empowered to determine the factual issue of whether a causal relationship exists based upon the record, and its determination will not be disturbed when supported by substantial evidence" (Matter of Virtuoso v Glen Campell Chevrolet, Inc., 66 AD3d 1141, 1142 [2009] [citations omitted]; see Matter of Oparaji v Books & Rattles, 147 AD3d 1165, 1165 [2017], lv denied 29 NY3d 918 [2017]). "As the party seeking benefits, claimant bore the burden of establishing — by competent medical evidence — a causal connection between [her] employment and the claimed disability" (Matter of Qualls v Bronx Dist. Attorney's Off., 146 AD3d 1213, 1214 [2017] [citations omitted], lv denied 29 NY3d 906 [2017]; see Matter of Tucker v City of Plattsburgh Fire Dept., 153 AD3d 984, 985 [2017], lv denied 30 NY3d 906 [2017]). Notably, "[w]here medical proof is relied upon to demonstrate the existence of a causal relationship, it must signify a probability of the underlying cause that is supported by a rational basis and not be based upon a general expression of possibility" (Matter of Granville v Town of Hamburg, 136 AD3d 1254, 1255 [2016] [internal quotation marks and citation omitted]; see Matter of Tucker v City of Plattsburgh Fire Dept., 153 AD3d at 986).
Claimant contends, among other things, that the Board misread the record and relied upon incompetent medical evidence in concluding that she did not suffer a further causally-related disability based upon the exacerbation of her preexisting fibromyalgia and in denying awards for lost time as a consequence thereof. We disagree. Five medical experts testified concerning the impact of claimant's accidental exposure to pepper spray upon her fibromyalgia, which was diagnosed in 2000 but purportedly remained in remission for nearly 15 years. Teymuraz Datikashvili, a physician specializing in physical medicine and rehabilitation who treated claimant shortly after the incident, testified that she suffered from a number of ailments, including aggravation of preexisting fibromyalgia, which he indicated was caused by her inhalation of pepper spray. He was, however, not familiar with claimant's initial fibromyalgia diagnosis. His opinion as to causation was based upon an article in a medical journal that revealed that exposure to pepper spray and other chemicals can exacerbate symptoms of fibromyalgia.
Claimant was also treated by Peiyun Chu, a neurologist who saw her from October 2014 through July 2015. Chu testified that claimant exhibited a number of symptoms, including diffused aches and pains indicative of worsening fibromyalgia. She explained, however, that fibromyalgia is not triggered by any particular mechanism, could improve or worsen without explanation and could possibly be causing the spasms and pain in claimant's neck and back. Chu issued a report noting that it is "possible" that claimant's exposure to pepper spray triggered her preexisting fibromyalgia, and she appears to have based her opinion on claimant's statement that her fibromyalgia had worsened.
Catherine Sullivan, a rheumatologist who also treated claimant, diagnosed her with fibromyalgia as well. She stated that there is no objective diagnostic tests for detecting fibromyalgia and that her diagnosis was based upon a physical examination. She acknowledged that the manner in which fibromyalgia affects different individuals varies and that there is no known cause. Sullivan noted that it is "possible" that claimant experienced a recurrence of her dormant fibromyalgia following her exposure to pepper spray at work. She opined that such exposure was the cause of the flare up, but admitted that she was unfamiliar with the Board's medical guidelines. Like the other doctors, she did not review any of claimant's medical records from treatment prior to this incident, and she based her opinion on information that claimant conveyed to her.
Testimony was also provided by two physicians who conducted independent medical examinations of claimant on behalf of the employer and its workers' compensation carrier. Matthew Chacko, a neurologist, testified that fibromyalgia is a condition that is primarily diagnosed and treated by a rheumatologist. Because his specialty is neurology, he declined to provide an opinion on whether the aggravation of claimant's underlying fibromyalgia was attributable to her exposure to pepper spray. Prem Chatpar, a rheumatologist, concurred with the other physicians who diagnosed claimant with fibromyalgia. He opined, however, that claimant's exposure to pepper spray did not cause the exacerbation of her preexisting fibromyalgia. He noted that fibromyalgia symptoms fluctuate in level of severity and that a specific mechanism for these fluctuations is not known, but that a stressful event can cause an exacerbation. However, he declined to state that, in claimant's case, her exposure to pepper spray was the triggering event.
The Board is vested with the authority to weigh conflicting medical testimony and to credit the opinion of one expert over that of another (see Matter of White v Bethany House, 147 AD3d 1173, 1174-1175 [2017]; Matter of Pengal v Chloe Foods Corp., 111 AD3d 1030, 1031 [2013]). Here, the Board's decision to credit Chatpar's opinion over that of the other physicians was entirely reasonable given the undisputed testimony that there is no known medical cause of fibromyalgia and that its symptoms are fleeting and vary considerably among individuals. Although claimant maintains that Chatpar based his opinion on erroneous facts, we are not persuaded, as the record establishes that claimant was exposed to pepper spray, not that it was directly sprayed at or on her. Moreover, the opinions of the other physicians were not compelling, as they were largely equivocal and based on claimant's own self-reporting. Consequently, we conclude that substantial evidence supports the Board's finding that claimant failed to establish that her exposure to pepper spray caused the exacerbation of her preexisting fibromyalgia, and we decline to disturb its decision (see Matter of Gaylord v Ichabod Crane Cent. School Dist., 248 AD2d 925, 926 [1998]). We have considered claimant's remaining arguments and find them to be unavailing.
Devine, Aarons, Rumsey and Pritzker, JJ., concur.
ORDERED that the decision is affirmed, without costs.