Matter of Spada v Keeler Constr. Co. (2025 NY Slip Op 05553)

Matter of Spada v Keeler Constr. Co.

2025 NY Slip Op 05553

Decided on October 9, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 9, 2025

CV-24-0449
[*1]In the Matter of the Claim of Guy Spada, Claimant,
v
Keeler Construction Company et al., Appellants. Workers' Compensation Board, Respondent.

Calendar Date:September 2, 2025

Before:Garry, P.J., Pritzker, McShan, Powers and Mackey, JJ.

Goldberg Segalla, Rochester (Bradford J. Reid of counsel), for appellants.
Letitia James, Attorney General, New York City (Alison Kent-Friedman of counsel), for respondent.

Powers, J.
Appeal from a decision of the Workers' Compensation Board, filed February 5, 2024, which ruled, among other things, that claimant sustained a causally-related binaural loss of hearing.
Claimant, a heavy equipment operator for many years, filed a claim for workers' compensation benefits in December 2019 alleging that he sustained hearing loss due to prolonged exposure to workplace noise. The employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) controverted the claim contending, among other things, that there was no causal relationship between claimant's asserted hearing loss and his work with the employer. Following an independent medical examination, a hearing and certain depositions, a Workers' Compensation Law Judge, among other things, established the claim for an occupational disease (binaural hearing loss) and found that claimant had sustained an 11.25% schedule loss of use. Upon administrative review, the Workers' Compensation Board affirmed, prompting this appeal by the carrier.[FN1]
"To be entitled to workers' compensation benefits for an occupational disease, a claimant must establish a recognizable link between his or her condition and a distinctive feature of his or her occupation through the submission of competent medical evidence" (Matter of Kretunski v Citywide Envtl. Servs. LLC, 233 AD3d 1218, 1218-1219 [3d Dept 2024] [internal quotation marks and citations omitted]; accord Matter of Song v City of N.Y. Dept. of Bldgs., 232 AD3d 1005, 1006 [3d Dept 2024]; Matter of Gandurski v Abatech Indus., Inc., 194 AD3d 1329, 1329 [3d Dept 2021]). Where, as here, it is alleged that the underlying condition "developed over time, rather than from a sudden event, a claimant is required to demonstrate by competent medical evidence that his or her condition resulted from unusual environmental conditions or events assignable to something extraordinary" (Matter of Song v City of N.Y. Dept. of Bldgs., 232 AD3d at 1006 [internal quotation marks, brackets and citations omitted]; see Matter of Barker v New York City Police Dept., 176 AD3d 1271, 1273 [3d Dept 2019], lv denied 35 NY3d 902 [2020]; see generally Matter of Duncan v John Wiley & Sons, Inc., 54 AD3d 1124, 1125 [3d Dept 2008]). The requisite medical evidence "on the issue of causation must signify a probability as to the underlying cause of the claimant's injury which is supported by a rational basis" (Matter of DeWolf v Wayne County, 228 AD3d 1218, 1218-1219 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 43 NY3d 955 [2025], appeal dismissed 43 NY3d 956 [2025]; accord Matter of Gunness v Prime Piping & Heating Inc., 234 AD3d 1082, 1084 [3d Dept 2025]). Although medical opinion evidence need not be expressed with certainty or in absolute terms, it nonetheless must be premised upon something more than speculation or "a general expression of possibility" (Matter of Gandurski v Abatech Indus., Inc., 194 AD3d at 1330 [internal quotation [*2]marks and citations omitted]; see Matter of Song v City of N.Y. Dept of Bldgs., 232 AD3d at 1006-1007; Matter of Tucker v City of Plattsburgh Fire Dept., 153 AD3d 984, 985 [3d Dept 2017], lv denied 30 NY3d 906 [2017]).
In addition to being evaluated by the carrier's consultant, claimant was examined by two otolaryngologists — one in 2018 and the other in 2022. Both physicians ultimately concluded that claimant's hearing loss was "likely" due to work-related noise exposure, but the record reveals that claimant provided inconsistent histories to these physicians. During the 2018 evaluation, claimant disclosed that he had "a long-term history of noise exposure" attributable to both his military service and his work in the construction industry and that he had a "family history of hearing loss in parents." However, the physician who evaluated claimant in 2022 testified that claimant denied "a family history of early hearing loss" and did not provide "a history of any other types of noise exposure" other than the noise he experienced at work, and the physician conceded that claimant's "military experience and firearm use . . . [would] definitely factor" into her opinion as to the source of his hearing loss. Notably, this same physician testified that, despite claimant's admittedly longstanding work exposure to noise, claimant's "hearing loss could have been idiopathic."
The carrier's consulting otolaryngologist similarly testified that it was "very obvious that [claimant] developed a noise-induced hearing loss over a number of years." However, at the same time he opined that "there could be other reasons" for this hearing loss and, as a result, he was "very kind" in awarding claimant an 11.25% schedule loss of use. As further explanation, the carrier's consultant acknowledged that claimant's extensive history of motorcycle riding and hunting were two additional "industrial sources of noise exposure" and that it was not possible to determine how much of claimant's overall hearing loss could be attributed to each of the various sources of noise. In addition, according to the carrier's consultant, claimant's age, genetics and/or inner ear disease could also serve as reasons for claimant's hearing loss. Although the record contains the results of various audiograms conducted on claimant over the years, only the carrier's consultant referenced these test results and, in so doing, testified that claimant's results were entirely inconsistent with noise-induced hearing loss. Significantly, the consultant testified that "the [particular] pattern of the hearing loss is very important because noise-induced hearing loss always . . . has primarily a high frequency loss in which the hearing loss at 4,000 cycles per second most commonly is the most severe loss of hearing," which, he clarified, was not demonstrated in claimant's audiogram. Specifically, the consultant noted that claimant's test results reflected a hearing loss at 500 cycles per second, resulting in[*3]"a[n] audiometric pattern that [was] not consistent with noise-induced hearing loss." Indeed, the consultant criticized the conclusions reached by the physician who conducted claimant's 2019 audiogram, stating that her finding that claimant had developed moderate hearing loss as the result of his employment was "simply not true."
As noted previously, the medical opinion evidence on the issue of causation need not be expressed with certainty or in absolute terms (see Matter of Song v City of N.Y. Dept of Bldgs., 232 AD3d at 1006-1007; Matter of Tucker v City of Plattsburgh Fire Dept., 153 AD3d at 985), and we acknowledge that the Board is vested with the exclusive authority to weigh conflicting medical opinions and to evaluate the medical evidence before it (see e.g. Matter of Oberg v Consolidated Edison Co. of N.Y., Inc., 211 AD3d 1271, 1272 [3d Dept 2022]). That said, the medical opinions upon which the Board bases its finding of a causal relationship nonetheless must be supported by a rational basis (see Matter of Gunness v Prime Piping & Heating Inc., 234 AD3d at 1084; Matter of DeWolf v Wayne County, 228 AD3d at 1218-1219). Here, each of the foregoing physicians indeed expressed that it was "likely or "very obvious" that claimant's hearing loss was attributable to work-related noise exposure. However, given the other documented sources of noise exposure (compare Matter of Granville v Town of Hamburg, 136 AD3d 1254, 1255-1256 [3d Dept 2016]; Matter of Maye v Alton Mfg., Inc., 90 AD3d 1177, 1177 [3d Dept 2011]), the conflicting medical histories provided by claimant and, most notably, the testimony of the carrier's consultant, who made clear that the results of claimant's audiograms were decidedly inconsistent with noise-related hearing loss, we are unable to conclude that these generalized statements of causation are otherwise supported by a rational basis in the record as a whole. Under these circumstances, the Board's finding that claimant sustained a work-related binaural hearing loss is not supported by substantial evidence (compare Matter of Gandurski v Abatech Indus., Inc., 194 AD3d at 1331; see generally Matter of Kretunski v Citywide Envtl. Servs. LLC, 233 AD3d at 1220; Matter of DeWolf v Wayne County, 228 AD3d at 1219-1220).
Garry, P.J., Pritzker, McShan and Mackey, JJ., concur.
ORDERED that the decision is modified, without costs, by reversing so much thereof as found that claimant sustained a causally-related binaural hearing loss; matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: The Board also found that the underlying claim was timely filed, a conclusion not at issue on appeal.